UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MARTIN T. SOLOMON,

        Plaintiff,                       Case No. 1:14-cv-446

v.                                              Honorable Robert J. Jonker

WILLIAM A. DeBORER,

        Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA). 42 U.S.C. § 12182. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Glending. Additionally, the Court will dismiss Plaintiff's claims alleging violations of the Eighth Amendment (deliberate indifference to serious medical need), the Uniform Commercial

Code and due process. The Court will serve the complaint against Defendants KPEP,[1] Deborer, Sherrick, Danapilis, (Unknown) Merrills, Webb, Mergener, Bennard, Clayton and S. Merrills with respect to Plaintiff's claims for violation of the First Amendment (retaliation), Eighth Amendment (inhumane conditions), and Title III of the Americans with Disabilities Act.

## Discussion

I.    Factual allegations

Plaintiff Martin T. Solomon presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) although the events about which he complains occurred while he was paroled to the Residential Sex Offender Program (RSOP) at the Kalamazoo Probation Enhancement Program (KPEP) facility in Benton Harbor, Michigan. Plaintiff names KPEP and the following KPEP personnel as Defendants: President/CEO William A. DeBorer; Robin Sherrick; Case Manager Mark Danapilis; (Unknown) Merrills; Director of Treatment Services Ann Webb; Heather Mergener; E. Bennard; Matthew D. Clayton; Scott Merrills; and Amber Glending.[2]

Plaintiff was paroled to the RSOP program at KPEP on March 12, 2014. Plaintiff alleges that Defendants Webb, Clayton, DeBorer, Danapilis and Mergener falsified documents to penalize Plaintiff once they discovered that Plaintiff had helped other KPEP residents submit complaints against KPEP employees, that Plaintiff had filed his own complaint against KPEP employees and that intended to file another suit against KPEP. Defendants Webb, Mergener,

---

[1] Although not initially named as a defendant, KPEP was added as a defendant by the Court's order granting Plaintiff''s motion to amend his complaint to add KPEP as a defendant.

[2] Hereafter, the Court will refer to Defendant (Unknown) Merrills as "Defendant Merrills" or (Unknown) Merrills, and will refer to Defendant Scott Merrills as "Defendant S. Merrills" or "S. Merrills."

Merrills, Danapilis, and Bennard allegedly falsified documents to reflect that Plaintiff refused to accept responsibility for his crime which lead to Plaintiff receiving a bogus parole violation and being sent back to prison.

Plaintiff was told by Defendants Webb, Clayton, Mergener, Danapilis and S. Merrills that filing suit, helping other residents file suit and failing to terminate previously filed lawsuits would result in Defendants falsifying a termination report to get Plaintiff kicked out of KPEP and sent back to prison. Defendant Clayton's connection to the parole board would ensure that Plaintiff served the seven months remaining on his maximum sentence in prison.

On or about March 25, 2014, Defendants Webb, Mergener, S. Merrills, Bennard, Danapilis, Clayton and Sherrick confronted Plaintiff in a hostile manner and informed him that they were ready to send him back to prison because he was filing complaints and assisting other residents in filing complaints against KPEP.

Defendant Mergener falsely stated that Plaintiff had consensual sex, that Plaintiff was in denial and not treatment ready for RSOP and that in her opinion he needed to be sent back to prison. Plaintiff alleges that Defendant Mergener working with Webb made up this false testimony to penalize Plaintiff for filing complaints and helping other residents to file complaints against KPEP.

A KPEP resident asked Plaintiff for help in submitting a complaint against S. Merrills for assault. Plaintiff later overheard Defendant S. Merrills talking to his wife Defendant (Unknown) Merrills, who stated that she had already talked to Defendants Webb and Clayton about fabricating a reason to discharge Plaintiff from KPEP to "teach his black ass for assisting resident[s] on complaints against KPEP." (Compl., docket #1, Page ID#14.)

Plaintiff complained to Defendants Webb, S. Merrills, Mergener, Danapilis and Clayton because they were reading his legal mail and because Defendant S. Merrills made copies of Plaintiff's lawsuit against KPEP and distributed them to KPEP employees. Several days after he complained, Defendants Webb and Mergener generated a termination report and Plaintiff was returned to prison.

Plaintiff alleges that Defendants Webb, DeBorer, Mergener and Clayton refused to provide him passes to leave the KPEP premises to go to the law library. Additionally, while at KPEP, Plaintiff tried to mail a lawsuit to the Berrien County Circuit Court by giving it to Defendant Bennard to place in the mail. However, Plaintiff's lawsuit was not mailed until after he returned to prison. While retrieving Plaintiff's belongings from KPEP, Pearline Solomon found Plaintiff's lawsuit and mailed it. Plaintiff alleges that by not mailing Plaintiff's lawsuit, Defendants Bennard, S. Merrills, Webb and Mergener interfered with Plaintiff's access to the courts.

Plaintiff alleges that Defendant DeBorer failed to ensure that Plaintiff received nutritional foods. Plaintiff was deprived of adequate daily recreational time. Defendants failed to provide Plaintiff with clothing and necessary hygiene supplies and Plaintiff was not allowed to leave the KPEP facility to buy his own food or hygiene supplies. Plaintiff was deprived of prescription medicine "at times" (*id.* at Page ID#14), deprived of the ability to receive prompt medical attention and the ability to obtain emergency care and medical supplies, such as catheters, lubricant and diapers. Although Plaintiff alerted Defendants Sherrick, Danapilis, Webb, Mergener and S. Merrills that he needed medical supplies, Defendants told Plaintiff "tough luck and we guess this will teach you to submit complaint/lawsuit on us." (*Id.*)

When Plaintiff fell in the shower, Defendants S. Merrills, Bennard and Danapilis failed to call 911 or take Plaintiff to a hospital for treatment. Plaintiff alleges that Defendants DeBorer and Sherrick have failed to provide handicapped accessible equipment for the showers which resulted in Plaintiff falling while in the shower causing injury. After a fall in the shower, Plaintiff crawled out of the bathroom. Defendant S. Merrills saw Plaintiff and laughed at him then walked away. Plaintiff reported the problem to Defendant Sherrick who said, "I am sick of medical issues you bring to us and legal shit you will be going back to prison." (*Id.* at Page ID#13.)

Plaintiff alleges that Defendants discriminated against him in violation of the Americans with Disabilities Act (ADA). Plaintiff alleges that Defendants failed to provide:

> handicap accessible equipment such as a shower chair, handicap rails in the showers . . . which caused [Plaintiff] to fall several times in the shower causing further injury, suffering and pain . . . [to his] back considering Plaintiff recent spinal surgery leaving Plaintiff unable to transfer from wheelchair to shower. There was no handicap alert button to . . . alert staff of the need for assistance. . . .

(*Id.* at Page ID#12.)

Further, Plaintiff alleges that Defendants did not provide accessible doorways, showers or rooms "which lead to Plaintiff injuring [him]self without being provided medical attention." (*Id.* at Page ID#15.) Plaintiff alleges that the regular plastic chair in the shower was too slippery when wet and was not "an approved handicap shower chair." (*Id.*)

Plaintiff alleges that he never signed a contract with KPEP before being terminated and was never given a copy of the KPEP rules before being terminated. Defendant Glending "ignored Plaintiff's use of the UCC . . . making [the] contract created by Defendants void and unenforceable against Plaintiff." (*Id.* at Page ID#13.)

-5-

Finally, Plaintiff alleges that he received a program rule violation. Plaintiff asserts that Defendants told him that "4 or more [program rule violations] would be equivalent to a parole violation." (*Id.* at Page ID#11.) Plaintiff alleges that KPEP failed to provide him with "due process protection" regarding a program rule violation he received.[3] (*Id.*)

As relief, Plaintiff seeks compensatory and punitive damages.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the

---

[3] In the complaint, Plaintiff appears to have intended to identify the date on which he received the program rule violation. Instead, Plaintiff left a blank line and failed to include the date.

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.[4] *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Retaliation

Plaintiff sets forth a variety of allegations to suggest that Defendants Webb, Clayton, Deborer, Danapilis, Mergerner, Bennard, S. Merrills, Sherrick and (Unknown) Merrills falsified or threatened to falsify documents that would result in Plaintiff being sent back to prison in retaliation for Plaintiff helping other KPEP residents submit complaints against KPEP employees, submitting his own complaint against KPEP employees and making clear that he intended to file a lawsuit against KPEP.

---

[4] In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Plaintiff alleges that he "was held prisoner" by KPEP and that he has been "imprison[ed]" by KPEP. (Compl., docket #1, Page ID#7). At this stage of the proceedings, the Court will assume, without deciding, that KPEP employees are state actors. *See Skelton v. Pri-Cor*, 963 F.2d 100, 102 (6th Cir. 1991) (finding that private corporation which operated a detention center where plaintiff was incarcerated pending sentencing was a state actor because the private corporation was "performing a public function traditionally reserved to the state"); *Carl v. Muskegon Cnty.*, 2014 WL 3973714, ___ F.3d___ (6th Cir. 2014) (holding that private psychiatrist was a state actor because by providing medical care to a pre-trial detainee she was performing a public function that was traditionally exclusively reserved to the state).

At this juncture, Plaintiff's allegations are sufficient to warrant service of his retaliation claim on Defendants Webb, Clayton, Deborer, Danapilis, Mergerner, Bennard, S. Merrills, Sherrick and (Unknown) Merrills.

### B. Access to Courts

Plaintiff alleges that Defendants Webb, Deborer, Mergener and Clayton refused to provide him passes to leave the KPEP premises to go to the law library. Additionally, while at KPEP, Plaintiff tried to mail a lawsuit to the Berrien County Circuit Court by giving it to Defendant Bennard to place in the mail. However, Plaintiff's lawsuit was not mailed until Pearline Solomon found it and mailed it. Plaintiff alleges that by not mailing Plaintiff's lawsuit, Defendants Bennard, S. Merrills, Webb and Mergener interfered with Plaintiff's access to the courts.

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824-28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)). In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or

contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Although Plaintiff alleges that he was not allowed to access a law library and that KPEP personnel did not mail a lawsuit that Plaintiff wished to file, Plaintiff has not alleged any facts to suggest that he suffered an actual injury. Plaintiff notes that he needed to go to the law library to do research. However, he does not allege what he was researching or why he needed to conduct the research before he was released from KPEP. Moreover, Plaintiff makes clear that although KPEP personnel did not mail Plaintiff's lawsuit, Pearline Solomon did. Plaintiff does not allege that the delay in mailing caused any injury. Based on the foregoing, Plaintiff has failed to allege sufficient facts to state an access to courts claim.

### C. Eighth Amendment

Plaintiff makes the following allegations about his treatment at KPEP: he was not provided with adequate nutritional food or daily recreational time; he was not provided with clothing or necessary hygiene supplies and was not allowed to leave KPEP to buy these items; he was deprived of prescription medicine "at times" (Compl., docket #1, Page ID#14); he did not receive medical attention, emergency care or medical supplies, such as catheters, lubricant and diapers.

Additionally, when Plaintiff fell in the shower, Defendants S. Merrills, Bennard and Danapilis failed to call 911 or take Plaintiff to a hospital for treatment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

1. <u>Inadequate Medical Care</u>

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or

non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supeme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the

misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

Plaintiff fails to allege that he faced a substantial risk of serious harm. Although Plaintiff fell in the shower, he does not allege that he was injured in any way. To be sure, falling in the shower is an unpleasant experience, but not every unpleasant experience requires an ambulance ride to the hospital for care. Additionally, although Plaintiff alleges that he was denied prescription medication "at times" (Compl., docket #1, Page ID#14), he does not allege that he was subject to a risk of harm as a result. Consequently, Plaintiff has failed to sufficiently state a claim for deliberate indifference to a serious medical need.

### 2. Inhumane Conditions

In addition to requiring prison officials to care for inmates' medical needs, the Eighth Amendment requires prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, and shelter, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer,* 511 U.S. at 832. Plaintiff claims that he was denied adequate food, recreation, hygiene supplies and medical supplies, including catheters, lubricant and diapers. At this juncture, Plaintiff's allegations are sufficient to warrant service of this Eighth Amendment (inhumane conditions) claim on Defendants DeBorer, Sherrick, Danapilis, Webb, Mergener and S. Merrills.

### D. ADA

Plaintiff alleges that Defendants discriminated against him in violation of the ADA by failing to provide equipment and facilities that were readily accessible to and usable by

individuals with disabilities. Because the KPEP showers were not accessible, Plaintiff was unable to transfer from his wheelchair to the shower and Plaintiff fell several times while showering.

Plaintiff does not identify which title of the ADA under which he seeks relief. However, only Title III of the ADA is applicable here. *See Cox v. Jackson*, 579 F.Supp.2d 831, 852 (E.D. Mich. 2008) (finding that "a private contractor does not become a 'public entity' under Title II merely by contracting with a governmental entity to provide governmental services"); *see also Wilkins-Jones v. County of Alameda*, 859 F.Supp.2d 1039, 1046 (N.D. Cal. 2012) (finding that a private contractor who is a state actor for § 1983 purposes is not a public entity under Title II because the private contractor is not "part of or created by the government itself.") Title III of the ADA does not permit Plaintiff to recover monetary damages. *See Smith v. Wal-Mart Stores, Inc.*, 167 F.3d 286, 293 (6th Cir. 1999) (recognizing that Title III's enforcement statute, 42 U.S.C. § 12188, which incorporates the remedies of 42 U.S.C. § 2000a-3(a), does not include money damages). However, Plaintiff may obtain injunctive relief. Moreover, the proper defendant under a Title III case is the person or entity who owns, leases or operates a place of public accommodation. *See* 42 U.S.C. § 12182(a).

At this juncture in the proceedings, Plaintiff's allegations warrant service of Plaintiff's ADA claim on Defendants DeBorer, Sherrick and KPEP only to the extent that Plaintiff seeks injunctive relief.[5]

---

[5] Plaintiff has not expressly prayed for injunctive relief. However, his allegations make clear that Plaintiff believes the KPEP facilities do not comply with the requirements of Title III of the ADA. A plaintiff who files a claim under Title III of the ADA can "at most[,] hope to improve access through an injunction." *Fischer v. SJB P.D., Inc.*, 214 F.3d 1115, 1120 (9th Cir. 2000). Thus, reading Plaintiff's *pro se* complaint indulgently, *Haines*, 404 U.S. at 520, as the Court must do, the Court presumes Plaintiff seeks such an injunction to improve access at the KPEP facility.

### E. UCC

Plaintiff alleges that he never signed a contract with KPEP before being terminated and was never given a copy of the KPEP rules before being terminated. Additionally, Plaintiff alleges that Defendant Glending ignored Plaintiff's citation to "UCC-1-1036 making [the] contract created by Defendants . . . void and unenforceable against Plaintiff." (Compl., docket #1, Page ID#13.)

A claim may be dismissed as frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). Claims that lack an arguable or rational basis in law include claims for which the defendants are clearly entitled to immunity and claims of infringement of a legal interest which clearly does not exist; claims that lack an arguable or rational basis in fact describe fantastic or delusional scenarios. *Neitzke*, 490 U.S. at 327-28; *Lawler*, 898 F.2d at 1199. Plaintiff's UCC claim is frivolous as a matter of law. *See Brzezinski v. Smith*, No. 12–cv–14573, 2013 WL 2397522, at *3 (E.D. Mich. May 31, 2013) ("The UCC speaks only to commercial law and does not provide a proper basis for appealing a criminal conviction, writing a habeas petition, or bringing a civil rights action . . . . Any appeal, habeas petition, or civil rights action that relied on the UCC would be frivolous."). Consequently, Plaintiff's UCC claim must be dismissed.

### F. Due Process

Plaintiff alleges that he received a program rule violation. Defendants told him that if he received four or more program rule violations it would be the equivalent of a parole violation. Plaintiff alleges that a program rule violation "triggers [a] liberty interest" which requires "due process protections." (Compl., docket #1, Page ID#11.)

In *Morrissey v. Brewer*, 408 U.S. 471, 481-84 (1972), the Supreme Court held that individuals threatened with the revocation of their parole possess a liberty interest that entitles them to minimal due process protections. In defining those minimal due process protections, the Supreme Court recognized two important stages in the parole revocation process - the preliminary hearing and the revocation hearing. *Id.* at 485. The Court stated that a preliminary hearing should be held promptly after the alleged parole violation or arrest to determine whether probable cause exists to hold the parolee for a revocation hearing. *Id.* at 485-87. If probable cause is found to exist, the parolee has a right to a hearing prior to a final decision on revocation by the state parole authority. *Id.* at 487-88. The minimal due process requirements at the revocation hearing stage include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489. The Court emphasized, however, that the second stage of parole revocation should not be equated with a full criminal prosecution. *Id.*

Plaintiff does not allege that after receiving a single program rule violation he was threatened with the revocation of his parole. Indeed, Plaintiff does not allege that one program rule violation had any affect on him at all. Rather, Plaintiff alleges that he was told that four or more program rule violations "would be equivalent to a parole violation." (Compl., docket #1, Page ID#11.) A single program rule violation that did not have any alleged impact on Plaintiff or his sentence does not raise due process concerns. Consequently, Plaintiff fails to state a due process claim.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Glending will be dismissed. Additionally, Plaintiff's claims for violation of the Eighth Amendment (deliberate indifference to a serious medical need), the UCC and due process will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Webb, Clayton, DeBorer, Danapilis, Mergerner, Bennard, S. Merrills, Sherrick and (Unknown) Merrills with respect to Plaintiff's retaliation claim, against Defendants DeBorer, Sherrick, Danapilis, Webb, Mergener and S. Merrills with respect to Plaintiff's Eighth Amendment claim (inhumane conditions) and against Defendants KPEP, DeBorer and Sherrick with respect to Plaintiff's ADA claim.

An Order consistent with this Opinion will be entered.

    /s/Robert J. Jonker
ROBERT J. JONKER
UNITED STATES DISTRICT JUDGE

Dated: August 22, 2014